## MORGAN *v.* MAHONY.

Opinion delivered June 19, 1916.

MORTGAGES—MORTGAGEE IN POSSESSION—REPAIRS AND IMPROVEMENTS—
LIEN EXISTS FOR WHAT PURPOSES—BOARD OF MORTGAGOR'S SONS.—
The mortgagee of land assigned the note and mortgage to one Y.,
who went into possession of the land. *Held,* Y., had a lien on the

land for what remained due on the mortgage debt, that he was entitled to the cost of only ordinary repairs made by him while in possession, that he was chargeable with rents and profits in excess of the mortgage debt; but was not entitled to a lien for permanent improvements placed on the property by himself, nor could he recover for a sum claimed to be owing to him by the mortgagor for the board of the latter's sons.

Appeal from Union Chancery Court; *James M. Barker,* Chancellor; reversed.

*Geo. M. LeCroy, Aylmer Fleniken* and *Neil C. Marsh,* for appellant.

1. Only $41 was due on the mortgage debt, and this was settled by the collection of rents by a mortgagee in possession. Young had no lien by contract and no "other indebtedness" after-incurred could be tacked to the mortgage debt past due. If the mortgage debt had not been paid by the rents, then only $41 and interest was due, and the land could only be sold for that amount. Morgan's sons owed nothing for board. Young could have no lien for the sons' board. 25 Cyc. 675, § § 4, 664; 51 Ark. 358; 96 Ark. 98.

2. Under the law, credits are applied, if not otherwise appropriated, to the oldest items of an indebtedness. 57 Ark. 595; 91 *Id.* 458; 28 *Id.* 440. This was the mortgage debt.

3. There was no duty of Morgan to support the sons or pay board and maintenance, as they had voluntarily abandoned their home. 29 Cyc. 1610.

4. It was error to bar appellant's right of redemption. Kirby's Digest, § 5420.

5. If Young was entitled to the ten acres as claimed specific performance only should have been decreed.

*Mahony & Mahony,* for appellees; *W. E. Patterson,* of counsel.

1. The evidence fully proves the balance due on the mortgage; the repairs and the board and maintenance of the sons. The chancellor properly found after crediting $87 rents received a balance due of $162. No settlement

was proven nor surrender of the note or deed of trust. The decree is right.

2.　Whether there was a contract for the sons' board and schooling is one of fact, and the evidence sustains the chancellor. The law sustains the finding as to the father's liability. 6 Ark. 50; 45 *Id.* 237; 29 Cyc. 1609-10.

3.　The contract putting appellee in possession is proven as security for the sons' board and schooling, and this possession and contract created a lien. 42 Ark. 247; 79 *Id.* 102; 66 *Id.* 33; 91 *Id.* 280; 98 *Id.* 382. As to the lien for repairs or improvements, there is no question. 97 Ark. 397.

HART, J. On January 4, 1913, J. E. Morgan instituted this action in the chancery court against J. K. Mahony, trustee, and James Young to cancel a certain mortgage on real estate executed by him and to restrain J. K. Mahony, as substituted trustee, from proceeding further in the foreclosure of said mortgage or deed of trust. The material facts are as follows:

J. E. Morgan owned forty acres of land in Union County, Arkansas, and on the 4th day of January, 1907, executed to B. W. Reeves a deed of trust conveying said land to W. G. Pendleton as trustee to secure an indebtedness of $200 due Reeves on November 1, 1907. Morgan made payments from time to time until on the 4th day of January, 1909, the balance due amounted to $41, and on that date James Young purchased said note and mortgage from B. W. Reeves and had the same assigned to him. Young went into possession of the land and collected rents therefor in the sum of $87. He claims that he paid $70 of this to make needed improvements on the place. Morgan and Young were brothers-in-law. Young claims that Morgan left his two minor sons with him to be boarded by him for the sum of 50 cents each per day; that their father told him to take possession of the forty-acre tract in question, collect the rents and apply the same toward the board of the boys. Young states that

he did this, and that, after deducting the necessary repairs, there was only left the sum of $17, which he applied toward the payment of the board of the boys; that after deducting this amount, and the amount paid him by the boys themselves, that Morgan owed him a balance of about $334 on their board. Young claimed that he had a lien on the land for this amount, and in 1911 he appointed J. K. Mahony, as substituted trustee, to foreclose the mortgage under the power of sale contained therein to satisfy this sum and the $41 due on the mortgage debt. Mahony duly advertised the land for sale under the power contained in the mortgage and Young became the purchaser at the sale. As before stated, Morgan instituted this action to cancel the mortgage or deed of trust executed by himself to Reeves, and to restrain Mahony from executing a deed to Young in the foreclosure proceeding under the power of sale contained in the mortgage. He introduced evidence tending to show that the repairs made by Young on the place were worth only about $15 and at most $25. He denied that he had made any contract with Young to board his sons, and denied that he had authorized him to take possession of the rents of the mortgaged premises for the purpose of paying their board.

The chancellor found that Morgan owed $61 on the mortgage debt, that he owed Young for improvements on the land $68, and board bill for his sons, not barred by the statute of limitations of $120, making a total of $249; that Morgan is entitled to a credit of $87 for rents collected by Young, leaving him owing Young a balance of $162, for which judgment was rendered in favor of Young on his cross-complaint.

The chancellor found that Young had a lien upon the land described in the mortgage to secure the $61 balance found to be due on the mortgage debt, and that he was also entitled to a lien on the land to secure the payment of $101 with the accrued interest, being the amount found to be due for repairs and the board bill.

A decree was entered in favor of Young in accordance with the finding of the chancellor and the plaintiff Morgan has appealed.

The principles of law governing the case are simple. Of course, Young had a lien on the land by virtue of the mortgage for whatever remained due on the mortgage debt. When he went into possession of the land as mortgagee he could not recover for permanent improvements placed upon the property by him, but was entitled to the costs of any ordinary repairs made by him while he had possession and he was chargeable with rents and profits in excess of the mortgage debt. *Green* v. *Maddox,* 97 Ark. 397. He was not entitled to any lien on the land for any amount that might be owed him by Morgan for the board of his sons. It is contended by Young that Morgan placed his sons to board with him and told him to take his pay out of the rents of the land. Even if the testimony of Young, in this regard, be considered as true, he would not have any lien on the land for the payment of the board of the sons of Morgan. The most he could claim would be the right to apply the rents while he was in possession of the land toward the payment of the board of the boys. Hence, it will be seen that the chancellor's decree was based upon the wrong idea of the law as applied to the facts found by him. In other words, assuming the facts found by him to be correct, Young was only entitled to a foreclosure for the balance due him on the mortgage.

We are, also, of the opinion that the chancellor's finding of facts was against the clear preponderance of the evidence. Young admits that he collected rents to the amount of $87. He also testified that he made needed repairs costing him $70. Other witnesses, who lived in the neighborhood, testified that the only repairs made by him was to fix the fences. Several of the witnesses testified that these repairs were not worth more than $15 and the others placed them at $25 at the most. We think the sum of $25 was the highest amount which the chancellor should

have allowed for repairs. This left a balance of $62, which was more than the amount of principal and interest due on the mortgage debt.

In regard to the board bill claimed by Young, we think the clear preponderance of the evidence is against him. He testified that he purchased the mortgage from Reeves in January, 1909, and took possession the next year after that. He said that Claude Morgan began to board with him on August 15, 1908, and remained until August 15, 1910; that Tom came to board with him June 20, 1909, and boarded until October, 1910; that he sent the boys to school a little over four months or maybe not so much; that there is a balance due on the board bill of about $334.70. His daughter and son corroborated him in his statement that Morgan made a contract with their father to pay the board of his children and agreed to pay therefor 50 cents a day for each one. On the other hand, Morgan flatly contradicted this testimony and is corroborated by one of his sons. He said that he left there in 1907 and went to another county. In this respect he is not contradicted. He denied that he made any agreement whatever with Young to board his boys. He said that his boys were working for themselves and paid their own board; that he permitted them to collect their wages and did not interfere with them in the management of their own affairs. In this respect he is corroborated by the testimony of both of his sons. They testified that for the most of the time they boarded at their uncle's, they worked at mills in the neighborhood and received as wages $1.25 per day each. They said they paid their uncle $3 a week for their board out of their wages and that they did not owe him anything, either for board or for anything else. They said they knew their uncle had charge of the land and collected the rents during a part of the time they boarded with him, but stated that he told them that he had bought the land from their father and they believed him.

It will be noted that Morgan left the county in 1907, and left his sons there. They began to board around at different places, and named the people they boarded with after their father left. They gave the names of the persons for whom they worked and the wages they received. It would have been very easy for Young to have contradicted their testimony had it not been true. Several witnesses testified that both Morgan and Young had a bad reputation for truth and morality in the neighborhood where they lived.

Young exhibited an account book made out with a pencil, which he claimed that he kept during the time his nephews boarded with him. The original book is exhibited to us. It is torn in many places and shows that the accounts of the two boys were kept separately. It is the contention of Young that Morgan made a contract with him to board both his sons, yet the account book showed **that he kept separate accounts.** This in itself tends to corroborate the testimony of the boys to the effect that each made his own contract for board and paid it. Young **himself admits that one of the boys did not begin to board** with him until the 15th of January, 1908, and that the other did not come until June 30, 1909. Morgan left the county in 1907, and it is not likely that he would have made a contract so far in advance for the board of his sons. When Morgan left the county, his sons went to board with other persons and paid their own board. It was more than a year before they went to board with their uncle. This tends to show that the boys earned their own living and it was not necessary for their father to have made a contract for their board.

We have not attempted to set out all the testimony in detail, but we have considered it carefully, and are of the opinion that a clear preponderance of the evidence shows that the boys paid their own board and that Morgan did not owe Young anything on that account. From the views we have expressed it results that the chancellor erred in not granting the relief prayed for by the plaintiff, Mor-

gan, and for that error the decree will be reversed and the cause remanded with directions to the chancellor to enter a decree in accordance with this opinion.