BRAUN *v.* ASKEW.

5-278 264 S. W. 2d 399

Opinion delivered February 1, 1954.

*Charles B. Thweatt,* for appellant.

*Goodwin & Riffel,* for appellee.

GRIFFIN SMITH, Chief Justice. Lewis and Frances Rhoton, now deceased, left a daughter, Frances Rhoton Askew. Mrs. Askew, as executrix and trustee for her brother, Riffel G. Rhoton, under the mother's will, sued to have a lien declared and foreclosed on Lot 10, Block 11, Faust's Addition to Little Rock. The lot was sold by the Rhotons to W. L. Fodrea March 1, 1921, for $2,500. Of this amount $100 was paid in cash and a note for $2,400 payable in installments of $20 over a period of 120 months was executed, each payment to draw interest at 8% from date.

Fodrea took possession at once and erected a sheet iron building on the back part of the lot. He paid taxes and met installment payments until 1930. Early in 1932 Mrs. Rhoton, with Fodrea's consent, took possession of a residence on the property, whereupon Fodrea moved into the sheet iron building where he remained until death. From proceeds of a judgment assigned by Fodrea Mrs. Rhoton collected $1,048.08 and applied it to the indebtedness. Through what appears to have been a coöperative purpose to make the property produce revenue the residence was converted into apartments of small capacity—six in all. In this undertaking Mrs. Rhoton spent $4,700 of her own money and made other improvements costing $593. In 1934 Fodrea paid $300 additional, but with this exception nothing more was paid, either as principal, interest, insurance, taxes, or upkeep.

Mrs. Askew's suit was filed in May, 1945, before Fodrea died. The decree resulting in this appeal was rendered in July, 1953.[1]

Much of the matter in controversy was stipulated after records had been examined and preliminary evidence heard. In a comprehensive opinion dealing with the various items the Chancellor found that unpaid obligations were in four categories: (1) Balance of original note, with interest, $1,862.49; (2) permissive expenditures for construction, etc., with interest, $11,644.60; (3) authorized expenditures made by Mrs. Rhoton in 1934—'7—'9 and '41, with interest, $1,710; (4) taxes and rental expenses, $15,256.56, with interest.[2]

The lien was found to be $16,790.52, but with interest added it amounted to $30,473.65. But the appellant was entitled to a credit of $8,250 plus interest, or $12,805.71.

[1] An order of Jan. 11, 1952, recites the death of W. L. Fodrea May 16, 1951; that Mrs. Charlseye H. Braun and Mrs. Margaret D. Goforth (daughters) were his sole heirs, and that Mrs. Braun was appointed administratrix June 4, 1951. The cause of action was revived in their names. In a separate answer of April 14, 1952, Mrs. Goforth stated that all of her interests had been conveyed to Mrs. Braun. [Lewis Rhoton died in 1936 and Bessie Riffle Rhoton, his wife, died in 1944.]

[2] In all instances interest was computed to Dec. 31, 1952.

Embraced within "taxes and rental expenses" were allowances for furniture purchased from time to time by the plaintiff. It was stipulated that furniture was not provable as an element entering into rental value of the property. The Chancellor, therefore, took the view that with the exception of the reconstructed sheet iron building in which Fodrea resided appellant's predecessor was in possession with Fodrea's complete acquiescence and that the joint enterprise contemplated a hands-off policy by Fodrea and a duty upon Mr. Rhoton's part to rebuild the property, purchase furniture, assume the obligation of renting and collecting, and in other respects cause the property to yield a maximum return.

It is not denied that $425 of the money Mrs. Rhoton spent in rebuilding went into the separate structure Fodrea occupied for so many years; that he did not pay taxes, upkeep of any kind, or even utility bills for his own quarters. Therefore, said the Chancellor, (in effect) the stipulations could be fairly construed as a willingness upon Mrs. Rhoton's part to apply whatever time and effort might be required to keep the property in demand condition, solicit tenants through advertisements, and by telephone when inquiries were made; purchase at her own expense the needed furniture,—and, in short, to generally supervise all operations necessary in producing an income.

On the other hand Fodrea was not willing or able to either pay the original debt in full, or compensate Mrs. Rhoton for added investments. After the apartments were built Mrs. Rhoton's expenditures had been considerably greater than Fodrea's original $2,500 contract.

Over a period of twenty years gross rental collections amounted to $29,611.52. Witnesses skilled in real estate transactions testified regarding the relative value of property furnished and unfurnished. Taking into account the implied contractual relationship of the parties, the court found that unfurnished the apartments

would have yielded $8,250, or 27.86% of the gross income of $29,611.52, and that with interest this should be $12,805.71. The net balance was then ascertained to be $17,667.94, for which judgment was rendered, with an order of foreclosure.

The method of computation is challenged. In particular it is urged that the ratio of rental income in relation to furnished apartments and the naked property as rebuilt for apartment purposes is grossly unjust. There was testimony that ordinarily apartment property unfurnished was thought of as having three-fourths of the value of furnished quarters. But there was also testimony that because of undesirable conditions attaching to the apartments in question there were protracted periods — particularly during the depression years—when for want of furniture the quarters would have been occupied only about 30% of the time.

We are affirming the Chancellor's findings in spite of the seeming discrepancy. In Fodrea's response and motion, made May 29, 1947—slightly more than two years after the complaint was filed—there is a recognition of rights accruing to Mrs. Rhoton superior to the ordinary relationship of mortgagor and mortgagee in possession. Mention is made of the plaintiff's undertaking "to make certain repairs and betterments to the improvements situated upon the lands described in the complaint and to advance the funds for the payment thereof upon condition that the defendant would consent that they take and hold possession and custody of said improvements as thus repaired and bettered, rent the same, collect the rentals derived therefrom, *pay thereout the reasonable cost of operation, including taxes and insurance,* and apply the net rentals to the liquidation of the balance [of the debt]."

In the same pleading there is a reference to the plaintiff's right to retain "the necessary and reasonable costs and expenses incurred and expended in the production of such rentals."

The rule that a mortgagee in possession is not entitled to recover the value of permanent improvements

to the land, but only the cost of ordinary repairs, is not disputed. *Morgan* v. *Mahony*, 124 Ark. 483, 187 S. W. 633. Nor is it contended that one who takes possession for the purpose of enforcing his lien is not a mortgagee in possession in respect of rights and obligations resulting from such possession. *McGinnis* v. *Less*, 147 Ark. 211, 227 S. W. 398. See, also, *Denham* v. *Lack*, 200 Ark. 455, 139 S. W. 2d 243.

When it is remembered that Mrs. Rhoton handled the property with Fodrea's complete acquiescence during the depression period and no doubt, by the policy pursued, created a condition that gave Fodrea a home for life tax-free, utilities-free, and unhampered in all respects, and when weight is given to other factors, such as the death of all persons who could verify or deny essentials; the long-time acquiescence of Fodrea in financial administration and management of the property, and the utter impossibility of saying at this late date that the parties were not in complete accord regarding Mrs. Rhoton's management,—with these facts before us we are not willing to say that the Chancellor erred in appraising the weight of evidence, or in the theory upon which the case was decided.

Affirmed.

GEORGE ROSE SMITH, J., dissenting. The various matters alluded to in the final paragraph of the majority opinion, such as laches, estoppel, etc., have all been eliminated by the parties' stipulations. These litigants have agreed to the penny upon every item of income and every item of expense. The only questions submitted to the trial court, and the only ones now before us, relate to the apportionment of the rent and to the appellees' right to compensation for Mrs. Rhoton's services. I think the chancellor was in error in his division of the rents.

It is stipulated that the total rent from these furnished apartments was $29,611.52. The chancellor allocated only $8,250.00 of this amount to the buildings, with the remaining $21,361.52 being attributed to the presence

of the furniture. This is the "seeming discrepancy" which the majority decline to correct.

The chancellor based his conclusion upon the opinion of expert witnesses, who testified that apartments of this kind would be hard to rent as unfurnished units. These witnesses submitted detailed calculations to show that had the property been rented without furniture the total income would have been slightly less than the figure selected by the chancellor. One of them, upon cross-examination, conceded that if the rents were to be divided equitably an allocation of $7,500 to the building and $22,000 to the furniture would be "utterly absurd." Yet that is the division now being approved.

Even though the testimony of these witnesses be accepted as correct, the theory of their calculations cannot fairly be applied to this case. It is shown that both the apartments and the furniture were of low quality, the furniture being worth only about $500 at the time of the trial. Any attempt to speculate upon what the apartments would have rented for without the furniture is just as irrelevant as a converse attempt to determine what the furniture would have rented for without the apartments. Either approach is like saying that the last straw alone is responsible for breaking the camel's back. The case before us involves an agreed amount of rent that is attributable both to the buildings and to the furniture. If we lay aside the artificial theory advanced by the appellees' expert witnesses, the evidence shows clearly enough that about a fifth of the rents should be credited to the appellees as a return upon the furniture. I would modify the decree to that extent.